Okay, will the attorneys please step up to the podium? Tell the court who you represent and approximately how much time your argument will take. But let me advise you that Justice Steele is not going to participate in this argument. He is going to listen to the tape. But please proceed, counsel. Good morning. Good morning, Your Honor. It's Lauren Bowser from the State Appellate Defender's Office on behalf of Timothy Ninko. Could you please keep your voices up? Thank you. Okay, good morning, Helen. Good morning. Assistant State's Attorney Adam Dolderfield on behalf of the people. Okay. Counsel, would you like to proceed? How much time will your argument take? Probably about 15 minutes. Five minutes for rebuttal. Counsel? It really depends how many of the issues come up, Your Honor. Very good. Please proceed, counsel. Good morning, Your Honors. May it please the Court. Today I'd like to discuss issues one and two of the brief, and I will rest on my brieferish with respect to issue three. Turning to my first issue. The State failed to prove in this case that Mr. Timothy Ninko had possession of firearms and the drugs that were found in the home that he shared with his family. It is undisputed in this case that Mr. Ninko did not have actual possession of these items. He lived in a home with his mother, his stepfather, his sister, and two young children. When parole officers came to the home and conducted a search in one of the two bedrooms in that home, they found a bag of marijuana on the nightstand, they found a gun in the bottom drawer of a dresser, and some ammunition for that gun in a cosmetics case in that bedroom. There was no identification in that room suggesting Mr. Ninko stayed in that room. No mail, personal belongings were introduced by the State. No evidence that any kind of men's clothing were found in that room. Mr. Ninko testified at trial that he had been sleeping in that room just prior to the time that the parole officers arrived, but that he normally slept in the living room with his sister and his sister's children. The State's only evidence tying Mr. Ninko to this bedroom at all was testimony from one of the parole officers that Mr. Ninko told them he shared that bedroom with his mother. The State failed to prove that Mr. Ninko constructively possessed any of the items in that room, and they showed no more than that he slept in the bedroom. Constructive possession requires knowledge of the presence of the contraband, as well as the exercise of immediate control over the area where it's found. So it's your position that if this Court were to view the evidence in the light most favorable to the prosecution, we could not come to a conclusion that a rational trier of fact could find that the defendant unlawfully possessed those items? Based on solely the fact that parole agents said that Mr. Ninko slept in that bedroom without anything more, no, that's not constructive possession. That's mere presence in the vicinity of contraband. The weapon was in a drawer in that bedroom. No evidence that Mr. Ninko's possessions were in that dresser. The ammunition was found in the cosmetics case. Again, nothing tying Mr. Ninko to that. Even if you were aware of the presence of this weapon, which we cannot say he was. But the drugs were found on top of the dresser, right, in plain view? So Mr. Ninko probably had knowledge of the drugs that were found on the nightstand. But simply being... So are we just talking about the bullets, or are we talking, you're going to concede on the drugs? I don't believe that the State still proved that he had the ability to exercise immediate and exclusive control over the area, which is required for constructive possession. These drugs were not found on his person. However, it's likely that he had knowledge. The State's case that he had knowledge of the drugs when they're in plain view is stronger under the law. You know, in People v. Massius, the Court said that we're not going to infer knowledge when an item is not in plain view. So with respect to the weapon, the State can't even prove he knew that that weapon was there. This Court has also held that just because an individual shares a living space with another doesn't mean he has constructive possession over contraband found in that living space, unless other evidence connects him to that item. The fact that he slept in this room in his mother's bedroom is not enough to connect him to a weapon in a drawer that might have lawfully belonged to Mrs. Ninko. The State's brief reiterates that Mr. Ninko was found to be under the influence of drugs and there were drugs in that room. However, that's not enough to find that he constructively possessed two other illegal items. Counsel, you've got to speak up. Sorry, I apologize. The State's brief, you know, finds that he slept in that room, so obviously everything in that room belonged to him. But we know that because more is required to prove constructive possession than mere presence in the vicinity, the State failed to prove that he possessed these weapons in this case. Turning to my second point, because the Armed Habitual Criminal Statute places an absolute ban on the very core conduct protected at the heart of the Second Amendment, the State cannot meet its burden in this case to show that the statute is constitutional. This Court has repeatedly held that the core right protected by the Second Amendment is the right to keep a firearm in one's home for self-defense. Mr. Ninko was convicted in this case of doing no more than that, keeping a firearm in his own home. But he is a convicted felon, correct? Absolutely. Can't restrictions be placed on felons? Restrictions, you know, Heller made clear that, you know, some restrictions are presumptively lawful. However, we have to go through the analysis. This Court held that there's a two-part approach for determining the Second Amendment claims under Heller. First, you determine whether the challenge statute implicates the core Second Amendment right, and if so, you move to the appropriate level of scrutiny. Well, as this Court has repeatedly held, the core right is the gun in the home. So obviously, Mr. Ninko's fundamental core rights are implicated in this case. And here, because the Armed Habitual Criminal Act contains no exception for within the home, it doesn't only slightly burden his fundamental enumerated constitutional right, it places an absolute permanent ban on it. Now, simply because of his status as a felon, you know, it doesn't remove him, this Court has held, from the Second Amendment protections. We have to go through and determine the level of scrutiny. And because this Court has held that when the statute at issue implicates a fundamental right, strict scrutiny is the appropriate level of scrutiny. Now, this Court held in Davis that the Constitution allows, you know, the limitation of felons' Second Amendment rights. But Davis was also dealing with a situation where the individual had the gun outside of his home. Where this Court has repeatedly stressed that the core right is within the home, it hasn't addressed whether felons lose that right. So are you taking the position that if the felon had the bullets and gun outside the home, he would have been in violation of that statute? Well, this Court has held that. It is my position that the statute is facially unconstitutional because it places a permanent ban on all felons from ever having the gun anyplace, including the home. So facially, that burdens the Second Amendment core right that this Court has repeatedly spoken to. But particularly in this case, as applied to Mr. Niko, where he was in his home, his fundamental rights, his core protected and enumerated right is implicated and burdened, heavily burdened. So turning to the scrutiny, you know, this Court has held that strict scrutiny is the appropriate level when we're dealing with a fundamental right, which we are here where he had the gun in his own home. In Ross, this Court stated that the Second Amendment can trigger, you know, more than one type of scrutiny depending on the type of law challenge and the type of restriction placed on the Second Amendment. And here, the type of restriction placed on the Second Amendment is an absolute ban of the core right. So therefore, strict scrutiny should be applied. You know, however, even under, you know, intermediate scrutiny, which this Court has been applying to many of these gun regulations, the State can't meet its burden to prove that these are proportionate to, you know, the purported safety interests of the public. In Wilson v. Cook County, this Court noted that once a court finds that, you know, implies heightened scrutiny, the statute is no longer presumed valid. The burden shifts to the State to justify the constitutional validity of the law. So here, the State argues that the Armed Capitual Criminal Statute is aimed at, you know, reducing gun violence. However, there's no public safety reason for extending the reach of the Armed Capitual Criminal Statute into the home. How does that protect the public from gun violence? Gun violence is already heavily criminalized in Illinois. There are numerous statutes partially penalizing gun violence. There are handgun enhancements, 15, 20, 25 to life, and it's almost every serious felony in Illinois. Those kind of statutes restrict or are aimed at gun violence. The statute at issue in this case puts a complete ban on someone's constitutional fundamental right to have a gun in their home. So therefore, it's not proportional to the State's purported interest of protecting the public from, you know, gun violence. There's no evidence in this case that Mr. Inigo has ever been involved in any sort of violent felony, has ever been in possession of a gun before, and he had this weapon in his home. As applied to him, the statute completely bans his fundamental enumerated right and doesn't show how it's protecting him, the public at all, from this particular defendant. Could I go back to the bedroom? There's a dresser and there's a bag on it. How many people have access to that bedroom? Well, this is a two-bedroom home where there are three adults living, four adults and two children. There's no evidence that any of them can't freely come and go into this room. I can't hear you. Sorry, there are four adults living in this home and two children. There is no evidence in the record at all that they don't all have access to this area. It's just a bedroom within the home. The State's evidence, according to the parole officer, is that Mr. Inigo and his mother slept in that room together. However, there's nothing in the record to suggest any of those other adults couldn't have come and gone from that bedroom. The father is three? Yeah, Mr. Inigo lives there with his mother, his stepfather, his adult sister, and her two young children. The parole officer testified they didn't go into the second bedroom because it was in such a state of disarray. So it's obviously an unusual living situation. It's unclear how many people sleep in that bedroom, have access to that bedroom. It's a two-bedroom apartment where people sleep in the living room. So it's not a situation where Mr. Inigo and his mother are the only two people in that house who can come and go from that room. Returning to the second argument, this Court has held that the dicta in Heller referring to the long-standing prohibitions on felons justifies the restrictions in this case. However, this Court also held that the same paragraph of dicta has prohibited allowing people to have weapons outside of the home. They said that the holding in Heller was narrowly constrained and that the dicta in the same paragraph about sensitive places prohibits. It was just dicta. We don't have to rely on that. So then to hold in another case is that that same dicta prohibits a felon from having a weapon in the home is inconsistent. So just in conclusion, the armed capital criminal statute sweeps too broadly in this case. It's aimed at preventing gun violence. It's not proportionally related to that interest where it completely bans felons from exercising their core fundamental right in their own home, even in cases where they've never been proven to be violent, where they've never had any crimes of violence in their background. There's no reason why Mr. Inigo's interest in protecting his family in his own home is any lessened by virtue of the fact that he has nonviolent felonies in his past. So respectfully, I would ask this Court to find that the state has not met its burden to show that the armed capital criminal statute is not a violation. The armed capital criminal statute is constitutional where it absolutely bans the fundamental core interest of the Second Amendment of protecting one's home. Thank you. Ms. Fouser, are you reserving some minutes for rebuttal? Very good. Counsel, state your name again for the record, please. Assistant State's Attorney, Adam Delderfield, on behalf of the people. Please speak up. Certainly, Your Honor. May it please the Court, two issues have been raised now before the Court, whether or not the evidence presented at trial proved defendant's guilt beyond a reasonable doubt, and whether the armed habitual criminal statute and the unlawful use of a weapon by a felon statute are unconstitutional under the Second Amendment. I'll begin with the first issue. Can you first explain, was there evidence of the bag on the dresser, I guess it was, was there, did you prove, how did you prove that that belonged to the defendant and not anyone else in the house? Well, actually, Your Honor, I believe the evidence was, the people disagree with the characterization of the evidence. Please speak up. We believe that the evidence was incorrectly stated in this argument just now. We believe there were, well, the evidence showed there were two bags of cannabis on the nightstand besides the bed, and then there was a larger bag of cannabis, the seeds, which contained the same drug substance, in a chest of drawers or dresser. But in law school and throughout my career, you had some connection between the defendant and the contraband. Right, and the connection here, there's actually a lot of evidence showing connection that proper inference could arise of constructive possession. What is that evidence? The evidence is that this is defendant's bedroom, defendant was in the bedroom. The bed was shared with the mother in the sense that she also uses it to go to sleep. But clearly the evidence showed that this was defendant's bedroom. And at the time of the arrest, the bedroom reeked of burnt cannabis. Defendant was in the bedroom, and cannabis was what was in the chest of drawers. And with the cannabis in the same drawer was a bullet, and then in the bottom drawer was the firearm of that same chest of drawers. Now what is it that connects the defendant to the chest of drawers? That it's defendant's bedroom, that defendant is present in the room, and that defendant has, well, he has the drugs in his system. He's presumably high, and it reeks of the burnt drugs, and that's the drug that's in the chest of drawers. Okay, the fact that it's his bedroom is sufficient to connect him to the contraband. That's your position? Well, that alone is, yes, that's a valid inference, that if this is his bedroom, that connects him to the contraband in the bedroom. But we also believe... I'm sorry. Yes? Another person also shared that bedroom. Correct. Did you test her? Oh, she's not under your control. I'm sorry. But it was found in a single dresser? There weren't two dressers? There was a nightstand, and there was a dresser, a single dresser, and then on the other end of the room, there was a pile of clothes with a small box, a cosmetics box. And the cosmetics box also contained ammunition. There are two locations for the ammunition. Well, does that make a difference, the fact that the bullets were found in the cosmetic box? Was that the defendant's cosmetic box, or possibly his mother's, or does the record tell us who that cosmetic box belonged to? The record only tells us that the cosmetics box was in that bedroom. It doesn't state that the defendant used cosmetics or used that box in any particular way. But that's where the bullets were found. Well, the bullets are found in two locations. They're found in the chest of drawers, or the dresser, rather, and they're also found in the cosmetics box. So there's two separate locations for the ammunition. And the armed habitual criminal statute is based on the firearm, which is in that dresser with the cannabis and with the firearm ammunition, or one of the lots of ammunition. But you feel his use of that bedroom is sufficient for us to draw an inference that he's connected to the contraband. That's your position. Well, certainly, where he's clearly been smoking the contraband, and it's his bedroom, and it's right there in his dresser. She concedes, I think, with respect to the marijuana, that he can be connected to it, but it's with respect to the weapon and the bullets. Certainly. Well, I would first say that the bullet is with the cannabis in the same drawer of that chest of drawers, and then the handgun itself is in that same dresser, albeit in a different drawer. However, the testimony did show that the firearm was readily accessible to the defendant. So where the drugs are right next to a bullet in one drawer, and the firearm is also in that same chest of drawers, and the defendant is in the room smoking the drugs, it seems very clear that there's a valid, legitimate inference of constructive possession there that a rational trier of fact could rely upon. But since this bedroom is jointly shared, could they as likely have been in the possession of his mother as well? She used the bedroom. There was absolutely no evidence presented at trial that the mother had anything to do with these items. But she did use that bedroom. Right. The evidence shows that the mother shared this bed with the defendant. That's not contested, in a sense. But there's no evidence that would lend any weight to an assumption that the mother had anything to do with these drugs. The only evidence shows that the defendant is smoking these drugs, and the defendant is storing them with his bullet and a firearm. I'm not talking about the drugs. I think we've received a concession on that. I'm talking about the other contraband that was found. Well, certainly the weight of the drugs in regards to the other contraband is that it's stored with them in the chest of drawers. So it's your position, since they're stored in the same place, we can logically and reasonably connect them to the defendant? Certainly, Your Honor. Certainly. Well, I'm not so certain. That's why I'm asking these questions. Right. I just mean certainly in the sense that that is our position in this case. And there's case laws, such as People v. Givens, that shows where a person is in a room in plain sight or accessible to the object and has control over that room, that there's a valid inference of constructive possession. What was in the dresser besides the inventory? Besides the contraband, Your Honor? There's no inventory of the content of the dresser besides that contraband. The evidence at trial didn't go through each item in the chest of drawers. So the mother could have had items, personal items, in the dresser? Separate from the evidence, it's conceivable that the mother had items in there. However, I would caution you in the sense that the defendant's brief claims that the evidence showed the handgun was hidden in clothing. There's nothing in the evidence at all to suggest that the firearm was hidden in clothing. That's not part of the record at all. And there's a pile of clothes? There's a pile of clothes on the other side of the room, yes, Your Honor. They're all his? The evidence wasn't linking the clothing specifically to the defendant. Yes, it would make me think there's at least control, that they're all his, control of everything in the dresser was his. Right. Well, everything in the dresser, the contraband at least, seems to be his in the sense that the bullet in there and the drug is in there. The contraband, he's using part of it and a bullet is stored in the same drawer and then a firearm in the bottom drawer. It seems clear that the contraband, or at least there's a valid inference, that defendant has constructive possession of that which is required to uphold this conviction. Okay. Thank you. Therefore, it's the appeal's position that certainly there was sufficient evidence that a rational trial fact could have found the essential elements beyond a reasonable doubt. The second issue presented to this Court is whether the armed habitual criminal statute and the unlawful use of a weapon by felon statute violate the Second Amendment of the Constitution. Just to begin with, the Second Amendment does not extend any protection to felons to possess a firearm. The Second Amendment protection, the United States Supreme Court in Heller and McDonald, specifically recognized an individual right of law-abiding citizens to possess a firearm in the house for defense of hearth and home. Defendant here is clearly not law-abiding. He's a recidivist forcible felon who was on mandatory supervised release at the time of the arrest. The laws that restrict or prohibit felons from possessing firearms are presumptively lawful. No court has held that defendant's position here is valid. It's laws prohibiting or restricting felons from possessing firearms are simply presumptively lawful and do not affect any core protection for the Second Amendment right. Do you rely on that dicta in Heller which says that it's reasonable to place certain restrictions on felons? We certainly appreciate that. We wouldn't classify it as dicta per se in the sense that it's not just a weightless thing. It's been repeatedly said twice by the United States Supreme Court and by various courts throughout the land. And furthermore, where a dicta has such indications of reliability and is from such a high court and has been repeatedly stated by that high court, the United States Supreme Court, lower courts should follow that dicta or those statements rather. Well, I'm in complete agreement with you, counsel, but I don't think that the state always takes that position with respect to dicta. And that's what your opponent raised that in certain instances when you talk about having guns outside the home, that's not your position, right? This dicta does not apply? We don't believe that, or rather, the dicta is not saying that. When defendants says that the Second Amendment protections should extend to firearms outside the home or to various situations like that, when the court is limiting the language of Heller and McDonald or limiting the holding, it's talking about limiting the extent of that right. And so when the court is saying that we don't extend the language to protect firearms outside the home or for felons or whatnot, that's limiting the holding. And we're in full agreement that the individual right that was recognized in Heller and McDonald is limited. But it's not limited in the reverse sense of saying that it's limited that you now can't recognize. It's just a bizarre way to say that it's limited in that sense that now felons can possess it and you ignore it where the court said they couldn't. Well, I'm in agreement with you in terms of following the dicta. Thank you. As is indicated. Thank you, Your Honor. Not one of my decisions, but please proceed. Thank you. So to begin with, reviewing the actual challenges themselves, the facial and as-applied challenges, this Court should first ask whether or not the two statutes impose any burden on conduct protected by the Second Amendment. And it clearly doesn't where, as you said yourself, the statements of the Supreme Court say that statutes prohibiting or restricting a felon's ability to possess a firearm are presumptively lawful. And the Second Amendment only extends to the rights of a law-abiding citizen to possess a firearm. So, therefore, immediately right off the bat, the law should appear valid where it doesn't impose any burden on the Second Amendment. Should this Court wish to apply some degree of scrutiny and find the Second Amendment is implicated, the facial challenge is susceptible to a test under Salerno where the defendant is required to show that there are no set of circumstances where the statutes could be validly applied. Here it's very clear that both statutes, the individual criminal and lawful use of a weapon by a felon, could be validly applied, such as where a felon is possessing a gun to support his drug trade or protect his drug trade or to intimidate people in his household. There is a wealth of circumstances where these statutes could be validly applied. Therefore, under Salerno as well, the facial challenge should be rejected. But should the Court still wish to apply a level of scrutiny, then rational basis would be best. Of course, it would be best from our perspective. But under Williams and Dawson, rational basis scrutiny was applied because no core part of the Second Amendment was implicated. And so, and clearly, the laws themselves here are reasonably related to achieve a goal of the state, which is the health, safety and welfare of the people. And if the Court would wish to follow people v. Ross and apply an intermediate level of scrutiny, and again, the people feel that the correct scrutiny is rational basis, but if intermediate scrutiny was applied, people v. Ross has already found the armed habitual criminal statute is valid under that level of scrutiny. And the unlawful use of a weapon by a felon statute is so similar that it too would survive that level of scrutiny. And although strict scrutiny is the wrong standard to apply, the defendant has raised it, and so it is a fact that the armed habitual criminal, unlawful use of a weapon by a felon statute would also survive strict scrutiny where they are narrowly tailored to a compelling government interest. They affect only a small minority of the population. Armed habitual criminal is only recidivist felons, forcible felons, or people with high drug crimes. And unlawful use of a weapon by a felon, again, is only felons, so it's a small segment of the population. And it is a compelling government interest to maintain the health, safety, and welfare of the people. Therefore, both statutes also survive strict scrutiny. Now, in regards specifically to the as-applied challenges, they're not properly before the court, where they weren't raised below. There's been no evidentiary hearing on much of the evidence that relates to the as-applied standard. For example, we would have shown here that the defendant had to sign an MSR agreement. He's on mandatory supervised release, parole, and part of that is agreeing not to possess a firearm. Furthermore, this firearm in this case is not a usual firearm. It is unusual and dangerous in the sense that it appears to be some sort of homemade crude firing device where it's kind of a breech-loaded section with a trigger on the bottom but no visible safety on it. It's clearly some sort of homemade device, very unusual. And the language from the Supreme Court specifically says that the Second Amendment would not extend to unusual and dangerous devices like this. So certainly, not only is the as-applied challenge not properly before the court, where an evidentiary hearing has not been held, but it simply wouldn't apply in this case where a defendant is a recidivist, forcible felon, who has an extremely long criminal record, but has actually been injured in a shootout during a drug deal, and his firearm is an unusual and dangerous device. So it's for these reasons, and those stated in the People's Brief, that we ask this Court to affirm defendant's convictions. Thank you, Mr. Delderfield. Thank you. Ms. Bowser, do you have some brief rebuttal? Just briefly, Your Honors. I think the State's argument here illustrates the fact that they do not have a single piece of evidence tying Mr. Ningo to the dresser or the cosmetics case where the firearms were found. Even if we were to concede that that was his marijuana, he sat in that room and used the marijuana, the State can't piggyback his knowledge and control over something that's in plain view over these other items that were accessible to many other members of the House, who possibly owned legally. And just with respect to the second argument, this Court has obviously rejected rational basis review when it comes to firearm enhancements and its more recent decision, sorry, firearm challenges to the Second Amendment and its more recent cases, and has also rejected the State's argument that Mr. Ningo doesn't even receive the protections because of his status as a felon. So Your Honors have no more questions. No, thank you, Ms. Bowser. Ms. Bowser, Mr. Delderfield, I want to compliment you on your briefs and your arguments. Counsel, is this your first argument? Second. You've done an excellent job. This matter will be taken under advisement and this Court stands in recess.